# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

GILBERT L. WILLIAMS, JR.,

                Plaintiff,

v.

HEATHER L. LEACH,

                Defendant.

Case No. 24-CV-643-JPS

**ORDER**

## 1.     INTRODUCTION

On May 24, 2024, Plaintiff Gilbert L. Williams, Jr. ("Plaintiff"), proceeding pro se, filed this action against Defendant Heather L. Leach ("Defendant"), together with a motion for leave to proceed without prepaying the filing fee. ECF Nos. 1, 2. The Court screened Plaintiff's complaint and, "finding that it present[ed] significant pleading deficiencies, grant[ed] Plaintiff leave to file an amended complaint that corrects those deficiencies." ECF No. 5 at 1. Specifically, the Court concluded that the complaint failed to state a claim because it did not include allegations sufficient to establish (1) infringement on a protected liberty interest or (2) state action, and additionally noted that two federal abstention doctrines may apply. *Id.* at 8–9.

Plaintiff filed an amended complaint on June 14, 2024, ECF No. 6, which the Court now screens. Based on its review of the amended complaint, the Court will permit Plaintiff to proceed on a claim of constitutional defamation. The Court will also grant Plaintiff's motion to proceed in forma pauperis.

**2.      MOTION TO PROCEED IN FORMA PAUPERIS**

A party proceeding pro se may submit to the court a request to proceed without prepaying the otherwise required filing fees, otherwise known as a motion to proceed in forma pauperis.[1] "The federal in forma pauperis statute, 28 U.S.C. § 1915, is designed to ensure indigent litigants have meaningful access to the federal courts while at the same time prevent indigent litigants from filing frivolous, malicious, or repetitive lawsuits." *Rodriguez v. Crim. Just. Facility Safety Bldg.*, No. 23-CV-394, 2023 WL 3467565, at *1 (E.D. Wis. Apr. 7, 2023) (citing *Nietzke v. Williams*, 490 U.S. 319, 324 (1989)), *report and recommendation adopted sub nom. Rodriguez v. Crim. Just. Facility*, No. 23-CV-394-PP, 2023 WL 3467507 (E.D. Wis. May 15, 2023).

To determine whether it may authorize a litigant to proceed in forma pauperis, the Court engages in a two-part inquiry. It must examine whether the litigant is able to pay the costs of commencing the action. 28 U.S.C. § 1915(a). The Court must also examine whether the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief"; if any of these criteria applies, the Court "shall dismiss the case." 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). Likewise, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

---

[1]Although 28 U.S.C. § 1915(a) specifically references "prisoner" litigants, it has been interpreted as providing authority for such requests by both prisoner and non-prisoner *pro se* litigants alike. *Floyd v. U.S. Postal Serv.*, 105 F.3d 274, 275–76 (6th Cir. 1997) (superseded by rule on other, inapplicable grounds); *see also Mitchell v. Farcass,* 112 F.3d 1483, 1491 n.1 (11th Cir. 1997) ("Section 1915(e) applies to all [in forma pauperis] litigants—prisoners who pay fees on an installment basis, prisoners who pay nothing, and nonprisoners in both categories.") (Lay, J., concurring).

It follows that a litigant whose complaint does not meet the criteria in 28 U.S.C. § 1915(e)(2) or does not plead claims within the Court's subject matter jurisdiction, and whose case cannot proceed as a result, necessarily cannot reap the benefits of proceeding in forma pauperis. In other words, although in forma pauperis status ought to be granted to those impoverished litigants "who, within the District Court's sound discretion, would remain without legal remedy if such privilege were not afforded to them," *Brewster v. N. Am. Van Lines, Inc.* 461, F.2d 649, 651 (7th Cir. 1972), a pro se litigant's financial status is only part of the picture in determining whether the litigant's case may proceed without payment of the filing fee.

The Court finds that Plaintiff is unable to pay the costs of commencing the action. 28 U.S.C. § 1915(a). He represents under oath that he has no income. ECF No. 2 at 1. He is unmarried and supports no dependents. *Id.* He owns no assets and has a meager balance in his bank account. *Id.* at 2. He states that he has no expenses. *Id.* He notes that his status as a state supervisee (discussed more in depth below) impedes his ability to make any income. *Id.*

Based on these representations, the Court is therefore satisfied that he is indigent. For the reasons stated below, the Court also finds that Plaintiff's complaint clears the 28 U.S.C. § 1915(e)(2) threshold and survives screening. Accordingly, the Court grants Plaintiff's motion for leave to proceed without prepayment of the filing fee. ECF No. 2.

3.      **SCREENING THE AMENDED COMPLAINT**

   3.1      **Legal Standard**

As noted above, when a pro se litigant seeks to proceed in forma pauperis, the Court must screen the litigant's complaint prior to service on defendants. The Court "shall dismiss the case" if it finds any of the

following: the action is frivolous or malicious, the complaint fails to state a claim upon which relief may be granted, or the complaint seeks monetary relief against a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2); or the case is outside of the Court's subject matter jurisdiction, Fed. R. Civ. P. 12(h).

A claim is legally frivolous when it "lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke*, 490 U.S. at 325); *see also Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997) (quoting *Neitzke*, 490 U.S. at 325). The Court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, a complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In reviewing a complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). However, the Court "need

not accept as true 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft*, 556 U.S. at 678) (internal bracketing omitted). A court is obligated to give pro se litigants' allegations a liberal construction. *Kelsay v. Milwaukee Area Tech. Coll.*, 825 F. Supp. 215, 217 (E.D. Wis. 1993) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### 3.2 Plaintiff's Factual Allegations

Plaintiff's case pertains to proceedings in which he was committed to state custody as a sexually violent person under Chapter 980 of the Wisconsin Statutes. ECF No. 2 at 2 ("I am on supervised release pursuant to Wisconsin Chapter 980"); *see also generally State of Wisconsin v. Gilbert L. Williams*, Racine County Case No. 2004CI000002 (hereinafter the "State Case").[2] As the State Case number suggests, the commitment proceedings began twenty years ago. Plaintiff was adjudicated a sexually violent person and committed in August 2005 to the custody of the Wisconsin Department of Health Services. State Case, Aug. 4, 2005 docket entry; Wis. Stat. § 980.06. He was confined to the Sand Ridge Secure Treatment Center. *Id.*, Mar. 23, 2006, Sept. 8, 2006, Feb. 22, 2007, Feb. 8, 2008, June 25, 2014, Apr. 27, 2018, and Mar. 14, 2023 docket entries.

In February 2024, he petitioned for discharge from confinement and into supervised release. *Id.*, Feb. 12, 2024 docket entry. The state court granted the petition and discharged Plaintiff into supervised release on

---

[2] The Court may take judicial notice of public records, including state court records. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

April 1, 2024. *Id.*, Apr. 1, 2024 docket entry. Plaintiff was placed into a residence on Douglas Avenue in Racine, Wisconsin. ECF No. 6 at 3; State Case, Mar. 4, 2024 docket entry (noting that Racine County provided a "proposed placement"); *see also* Wis. Stat. § 980.08(dm) (requiring county to identify an "appropriate residential option" for individual who petitions for supervised release). The State Case is now listed as closed. State Case, "Case summary"; ECF No. 6 at 5 (Plaintiff reporting that "[t]here are no other legal proceedings" of which he is aware).

Plaintiff alleges that Defendant Heather L. Leach ("Defendant") violated his constitutional rights in the time leading up to his discharge into supervised release. Defendant worked for "Community Psychological Services, LLC" (hereinafter "CPS") and interacted with Plaintiff in that role during the relevant time. *Id.* at 1–2. Plaintiff states that CPS "is a private company contracted with [the] Wisconsin Department of Health Services as a supervised release clinical manager." *Id.* at 3.[3] The amended complaint also references "Dr. Theresa McLaren" as an "independent contractor" with CPS. *Id.*

Plaintiff states that another person on supervised release—a "client" of Dr. McLaren (hereinafter the "Client")—supposedly reported to Dr. McLaren that he was afraid that Plaintiff "might sexually assault him if [Plaintiff] moves in" to the Douglas Avenue residence. *Id.* at 2–3. It is not

---

[3]The original complaint noted that Defendant was credentialed as a Licensed Clinical Social Worker and an attorney. ECF No. 5 at 5 (citing ECF No. 1 at 1–2). Although Plaintiff did not include this allegation in his amended complaint, *see id.* at 10 (instructing Plaintiff that "[t]he amended complaint supersedes the prior complaint" (citation omitted)), the Court includes it here for context. It is not clear whether the "supervised release clinical manager" designation refers to Defendant Leach or to CPS or both; Plaintiff at times seems to refer to the individual interchangeably with the entity.

clear exactly when the Client's alleged report to Dr. McLaren took place (and Plaintiff would be unlikely to have this information), but it must have taken place before or on March 19, 2024. On that date, Defendant repeated the Client's alleged statement to Dr. McLaren in an email to three "representatives of the [Wisconsin] Department of Health Services and Justice Point, Inc." *Id.* at 2. However, on March 26, 2024, "[a]fter consultation with Dr. . . . McLaren . . . by phone . . . , CPS learned that Dr. McLaren had no recollection of telling CPS that her [supervised release] client ever reported that he feared" Plaintiff might sexually assault him if they were placed into the same residence "nor had she recorded any information about this in her treatment notes." *Id.* at 3.

As already noted, Plaintiff was discharged from confinement on April 1, 2024. In addition to seventy-two standard rules of state supervision and two rules related to financial obligations, Plaintiff was ordered to follow two "additional" rules of supervision:

> 75. You shall not engage in any sexual behaviors towards any person. This includes, but is not limited to, propositioning sexual contact through verbal or written (notes/messages) communication, sexual gestures or sexually suggestive language.

> 76. You shall be fully clothed when in the common areas of your residence. This includes being clothed both top and bottom. If you are in the state of undress, you should be in the privacy of your own bedroom or bathroom.

*Id.* at 3–4. Plaintiff directly attributes the imposition of these two additional conditions to Defendant's March 19, 2024 email repeating the Client's alleged statement to Dr. McLaren. *Id.* at 3–4 ("Due to the email sent out by Heather L. Leach, Gilbert Williams was given additional supervised release rules to ensure his behavior is in check . . . ."); *id.* at 5 ("[Defendant's] actions

have created a more stringent structure to the supervised release program"
for Plaintiff.). He does not state whether the contents of Defendant's March
19, 2024 email in fact came up in his April 1, 2024 state court discharge
hearing, or if they did, whether the state court relied on them in fashioning
these two conditions of supervised release (or whether the state court relied
on some other reason to impose these two conditions).[4]

At some point, Defendant sent a "letter of correction" via email to
the Sand Ridge Secure Treatment Center, in which she apparently walked
back her statement that Dr. McLaren had heard this information from her
client. *Id.* at 4–5; *see also* ECF No. 1 at 2. Plaintiff does not state when
Defendant sent this letter of correction—specifically, whether she issued it
before or after the April 1, 2024 hearing on Plaintiff's petition for discharge
into supervised release. If the letter of correction was issued before that
hearing, Plaintiff does not state whether its contents came up during the
hearing. Plaintiff expresses concern that if his term of supervised release is
revoked, Defendant "will represent the treatment portion of the
proceedings," *id.* at 5; in other words, Plaintiff suggests that Defendant's
further involvement in his case calls the fairness of those proceedings into
doubt.

Plaintiff finally notes that he was placed into the same residence as
the Client who made the alleged statement that Dr. McLaren repeated in
her March 19, 2024 email. *Id.* at 4. The Client "does not have the same rules
imposed on him." *Id.* (Plaintiff does not state whether the client is on

---

[4] He also does not state whether these conditions were imposed at the April
1 hearing, or at some point thereafter. *See* Wis. Stat. § 980.08(6m) ("A person on
supervised release is subject to the conditions set by the court . . . . Within 10 days
of imposing a rule, the department shall file with the court any additional rule of
supervision not inconsistent with the rules or conditions imposed by the court.")

supervised release from Chapter 980 confinement as a sexually violent person or for some other reason; in other words, Plaintiff does not allege whether the client is similarly situated to him.) Plaintiff complains that the Client has "ma[d]e additional false claims against" him—he does not say what those claims are—which "creat[es] an extremely uncomfortable and awkward living situation." *Id.* at 5.

For relief, Plaintiff requests monetary damages as well as that Defendant "be restricted from any dealings with [Plaintiff's] supervised release activities" and that her "credentials . . . be reviewed, and [her] license revoked." *Id.* at 6.

### 3.3    Analysis

The Court previously found Plaintiff's pleading deficient in two ways. ECF No. 5 at 6–8. As to the first deficiency, Plaintiff now satisfactorily alleges in the amended complaint that Defendant was acting under color of state law for purposes of stating a claim under 42 U.S.C. § 1983 that his constitutional rights were violated. He has stated that Defendant worked for a private company, CPS, which in turn has a contract with a Wisconsin state agency to provide services related to state confinement proceedings, and that Defendant was acting pursuant to that state contract when she reported information about Plaintiff that allegedly led to two additional conditions of supervised release. At the screening stage, this is sufficient to establish the state action element that is an essential ingredient of a constitutional claim under § 1983. *See L.P. v. Marian Cath. High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017) ("The plaintiff must identify a sufficient nexus between the state and the private actor to support a finding that the

deprivation committed by the private actor is 'fairly attributable to the state.'" (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982))).[5]

    The second deficiency that the Court found in the original complaint was that Plaintiff had not sufficiently pleaded a constitutional defamation claim because he failed to allege facts showing that Defendant's conduct "altered his legal status or otherwise infringed on any of his protected liberty interests." ECF No. 5 at 6–7. "[M]ere defamation even by [a] state actor is not actionable under the Constitution." *Huon v. Former Madison Cnty. State's Att'y William Mudge*, No. 12-CV-0166-MJR-PMF, 2013 WL 12152427, at *16 (S.D. Ill. Aug. 22, 2013) (citing *Hedrich v. Bd. of Regents of the Univ. of Wis. Sys.*, 274 F.3d 1174, 1184 (7th Cir. 2001)), *aff'd sub nom. Huon v. Mudge*, 597 F. App'x 868 (7th Cir. 2015). "In order to 'cross the line from mere defamation' to a constitutional violation, a plaintiff must offer facts to show that the defendant's conduct and/or statements were 'so stigmatizing' that they constitute 'infringement of a liberty interest.'" *Id.* (quoting *Hedrich*, 274 F.3d at 1184). "[T]o implicate a liberty interest, such charges of defamation must be coupled with the alteration of a legal status," *Townsend v. Vallas*, 256 F.3d 661, 669 (7th Cir. 2001) (citations omitted), or "linked to the deprivation of 'a right previously recognized under state law.'" *Ross v. Yordy Constr. Co. v. Naylor*, 55 F.3d 285, 287–88 (7th Cir. 1995) (quoting *Paul v. Davis*, 424 U.S. 693, 708 (1976)).

    As a threshold matter, the Court's characterization of the legal theory of Plaintiff's claim as one of constitutional defamation still holds— Plaintiff alleged in his initial complaint and still alleges, at bottom, "that

---

    [5]*But see, e.g., Costa v. Ramaiah*, 689 F. Supp. 3d 553, 584–87 (N.D. Ill. 2023) (granting motion to dismiss claims against medical providers and social worker for lack of state action).

Defendant made a statement about him and that this statement harmed him." ECF No. 5 at 6. Constitutional defamation is a species of a procedural Due Process claim. *See Brown v. City of Michigan City, Ind.*, 462 F.3d 720, 729–32 (7th Cir. 2006) (discussing whether the plaintiff was deprived of a constitutionally protected liberty interest in violation of "procedural due process under the 'stigma plus' framework of *Paul* . . . , 424 U.S. 693"). The Court notes this for the purpose of clarifying the bounds of Plaintiff's claim: he is dissatisfied with the outcome of the state procedures through which he was discharged from Chapter 980 confinement and into supervised release because of how Defendant's statement in the March 19, 2024 email might have led to the imposition of certain conditions of supervision.

Plaintiff has never alleged, in either version of his complaint, that any other feature of these procedures was constitutionally insufficient. He also does not argue that the additional conditions of supervised release allegedly imposed as a direct result of Defendant's March 19, 2024 email—prohibiting him from sexual association with any other person and from being unclothed in common areas of his shared residence—have kept or will keep him from exercising any constitutionally-protected fundamental right to do either of those things, such that a substantive due process claim would be appropriate. *Brown*, 462 F.3d at 732 (citing *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). In plainer terms, Plaintiff does not allege that he wishes to engage in either of those behaviors, has a constitutionally protected right to do so, and is harmed because his conditions of supervised release prohibit him from doing so.[6] Rather, he is upset by the existence of those conditions and how they came about

---

[6]Likewise, the Court takes no position on whether Plaintiff could state a substantive due process claim.

through Defendant's alleged false statement. Each version of Plaintiff's complaint has proceeded on this basic theory. Plaintiff's claim is therefore best understood as a constitutional defamation claim grounded in procedural Due Process.[7]

With that clarification in mind, the Court turns to the amended complaint and finds that Plaintiff has sufficiently alleged therein that Defendant's actions infringed on a protected liberty interest, which the Court defines as having conditions of supervised release from state civil confinement that are not more restrictive than necessary relative to Plaintiff's individual circumstances. He has therefore stated a claim for constitutional defamation that is adequate to survive screening.

"Liberty interests can arise from two sources: the Federal Constitution or state law." *Thielman v. Leean*, 282 F.3d 478, 480 (7th Cir. 2002) (citing *Shango v. Jurich*, 681 F.2d 1091, 1097 (7th Cir. 1982)). Plaintiff does not state what the source of his protected liberty interest is nor what the exact nature of the liberty interest is, but this is "not fatal" at the pleading stage, *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992),

---

[7]The Court's previous finding that Plaintiff must proceed on federal question jurisdiction or not at all in federal court also still holds. ECF No. 5 at 6 & n.2. Plaintiff has affirmed that he intends to proceed on federal question jurisdiction rather than any state-law defamation claim on diversity jurisdiction. ECF No. 6 at 7. He must therefore satisfy the constitutional defamation pleading standard.

Separately, the Court notes that—although Plaintiff expresses concern that the Client is not subject to the same conditions of supervision that he is, which could be construed as an Equal Protection claim—Plaintiff will not be permitted to proceed on an Equal Protection claim at this time. This is because, as noted above, Plaintiff has not alleged that the Client is "similarly situated" to him. *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010) (citations omitted). More importantly, it is not necessary because "[p]roceeding on different constitutional theories based on the same facts is redundant." *Huff v. Lott*, No. 3:21-CV-503-RLM-MGG, 2023 WL 2691602, at *2 (N.D. Ind. Mar. 29, 2023) (collecting cases).

particularly in light of Plaintiff's pro se status. For screening purposes, the Court characterizes Plaintiff's putative liberty interest as having conditions of supervised release from state civil confinement that are not more restrictive than necessary relative to Plaintiff's individual circumstances. *See, e.g.*, *Paige v. Hudson*, 234 F. Supp. 2d 893, 901–03 (N.D. Ind. Dec. 5, 2002) (examining whether the plaintiff had a protected liberty interest in the continuation a specific condition of probation).[8]

The Court further assumes, again for purposes of screening, that such a liberty interest can arise under the federal Constitution. *See, e.g.*, *White v. Steuben County*, No. 1:11-CV-019, 2011 WL 4496504, at *6–9 (N.D. Ind. Sept. 27, 2011) (analyzing whether the plaintiff had a protected liberty interest in the continuation of a specific condition of probation and whether such an interest arises under the Due Process clause). Meanwhile, Chapter 980 of the Wisconsin Statutes, under which Plaintiff was initially confined and which still governs his supervised release, provides that "[t]he department [supervising Plaintiff] shall arrange for control, care[,] and treatment of the person in the *least restrictive manner* consistent with the requirements of the person and in accordance with the plan for supervised release approved by the [state] court." Wis. Stat. § 980.08(6m) (emphasis

---

[8]On the other hand, Plaintiff's allegations that Defendant's actions have led him to feel uncomfortable in his shared housing, and/or have led the Client, Plaintiff's roommate, to make further unspecified false accusations about Plaintiff, do not implicate a protected liberty interest. Feelings of personal discomfort are not constitutionally actionable. Moreover, there is no indication that the Client/roommate is a state actor so he cannot be subject to constitutional liability for any of his actions with respect to Plaintiff.

As already explained above, the Court does not characterize Plaintiff's putative liberty interest as being allowed to do the activities his conditions of supervised release prohibit him from doing—namely, to sexually associate freely or to clothe/unclothe himself in common areas—because Plaintiff himself does not complain that he is not allowed to do these things.

added). Such language can give rise to a state-created liberty interest. *See Thielman*, 282 F.3d at 480.

Importantly, even where such language exists in state statute, "Chapter 980 inmates have constitutional procedural protections in their [supervision] level only when the proposed change in [supervision] would effect an 'atypical and significant hardship in relation to the ordinary incidents of [supervision].'" *Jorgenson v. Bartow*, No. 09-C-186, 2009 WL 728454, at *4 (E.D. Wis. March 17, 2009) (quoting *Thielman*, 282 F.2d at 484 and citing *Sandin v. Connor*, 515 U.S. 472 (1995)); *see also Bartley v. Wis. Dep't of Corr.*, No. 07-C-143-C, 2007 WL 1087790, at *4 (W.D. Wis. April 5, 2007) ("Regardless of the source of the protected interest, however, the focus is on the severity of the deprivation suffered by the inmate." (citing *Lekas v. Briley,* 405 F.3d 602, 607 (7th Cir. 2005))).

Plaintiff alleges that Defendant's statements in the March 19, 2024 email led to the imposition of additional conditions of supervised release that restrain him in a way that is greater than required relative to his individual circumstances (or, at the very least, is rooted in allegedly false information). The Court will assume for purposes of screening that those additional conditions work an "atypical and significant hardship . . . in relation to the ordinary incidents of [supervision]," *Sandin*, 515 U.S. at 484, or amount to a "sever[e] . . . deprivation," *Lekas,* 405 F.3d at 607. Pleading such facts would seem to require Plaintiff to know about comparator cases (i.e., what typically happens to similarly situated supervisees). Plaintiff is unlikely to have access to this kind of information at the pleading stage. Taking into account the Court's obligation to view pro se complaints leniently, *Erickson*, 551 U.S. at 94, at this time the Court does not see this shortcoming as a reason to dismiss the amended complaint.

Finally, Plaintiff alleges that the additional conditions of supervised release of which he complains were imposed as a direct result of Defendant's March 19, 2024 email, the contents of which Defendant walked back in a later "letter of correction." ECF No. 6 at 3, 5. As the Court noted, Plaintiff has failed to allege the timing of this letter of correction. Whether facts exist that permit an inference that Defendant's March 19, 2024 email indeed directly caused the imposition of the additional conditions of supervised release—or to the contrary, if facts exist that demonstrate the letter of correction was sent prior to the April 1, 2024 hearing, thereby weakening any inference that the March 19, 2024 email resulted in the imposition of these conditions—is something the parties should explore in discovery. At this time, Plaintiff's allegation that the additional conditions of supervised release were imposed "due to" Defendant's actions is sufficient to show causation. *See McGregor for Est. of Yawer v. City of Chicago*, No. 16 C 4956, 2020 WL 10110999, at *3 (N.D. Ill. July 8, 2020) ("[C]ommon-law principles of causation apply to claims of constitutional torts under § 1983." (collecting cases)).

Accordingly, for all these reasons, the Court finds that Plaintiff has sufficiently alleged a constitutional defamation claim that may proceed past screening. As already noted, the Court accepts all factual allegations in Plaintiff's amended complaint, as well as matters of which it has taken judicial notice, as true. In this way, "the Court's screening order . . . employ[s] the same standard that applies to Rule 12(b) motions to dismiss." *Smith v. Howard*, No. 20 C 7353, 2022 WL 4367575, at *1 (N.D. Ill. Sept. 16, 2022) (citing *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017)). However, the Court makes two provisional legal conclusions above, namely that Defendant was acting under color of state law, and that Plaintiff has a

liberty interest protected by either the federal Constitution or Wisconsin state law. Notwithstanding the Court having taken all of Plaintiff's allegations as true, these provisional legal conclusions are subject to being revisited on a motion to dismiss (for example, if Defendant can present additional legal authority demonstrating that Plaintiff's allegations fail to state a claim). And as always, Plaintiff's factual allegations may be put to the test in a motion for summary judgment if, after discovery, Defendant believes she can demonstrate that she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

The Court turns to some final matters of note at screening. First, the Court previously raised concerns that Plaintiff's allegations may relate to an ongoing state case and therefore trigger one of several doctrines requiring the federal court to abstain from hearing the case. EC No. 5 at 8–10. However, based on Plaintiff's representation that there is no ongoing legal proceeding and the Court's own review of state court records, it is satisfied that it is not required to abstain from hearing this case.

Second, the Court is required to dismiss cases that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(iii). Plaintiff alleges that Defendant wronged him by making a misrepresentation to a state court and/or the Wisconsin Department of Health Services during his Chapter 980 supervised release proceedings. Such an action may be considered a "quasi-judicial function for which she is protected by absolute immunity." *Tobey v. Chibucos*, 890 F.3d 634, 650 (7th Cir. 2018) (citing *Dawson v. Newman*, 419 F.3d 656, 663 (7th Cir. 2005); *Smith v. Gomez*, 550 F.3d 613, 619 (7th Cir. 2008); and *Walrath v. United States*, 35 F.3d 277, 281 (7th Cir. 1994)). On the other hand, performing "day-to-day duties in the supervision of a parolee" is not protected by absolute

immunity. *Id.* (citing *Dawson*, 419 F.3d at 662 and *Archer v. Chisholm*, 870 F.3d 603, 612–13 (7th Cir. 2017)). Where Defendant's actions fall on that spectrum—and accordingly whether she could assert absolute immunity— is a determination that the Court leaves for a later time. Moreover, any assertion of immunity would hinge on whether Defendant was, in fact, acting under color of state law at the time of the events in question. Accordingly, because all these issues are bound up together, the Court does not find it appropriate to dismiss the case on the basis of immunity at this juncture.

Third and finally, the Court's allowing Plaintiff's constitutional defamation claim to proceed does not preclude Defendant from arguing, if appropriate, that the administrative exhaustion requirement in the Wisconsin administrative code applies to Plaintiff and that Plaintiff has failed to meet it. Wis. Admin. Code DHS § 98.10 (2024); *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) (noting that failure to exhaust administrative remedies is an affirmative defense).

**4.    CONCLUSION**

For the reasons stated herein, Plaintiff may proceed on a claim of constitutional defamation.

Plaintiff's next step in this matter is to serve his amended complaint together with a summons on Defendant. *See generally* Fed. R. Civ. P. 4. Plaintiff may either request service on Defendant by the U.S. Marshals or obtain service on Defendant on his own, using one of the methods described in Federal Rule of Civil Procedure 4(d)–(e).

If Plaintiff chooses to obtain service on Defendant on his own, he should simultaneously file a request for the Clerk of the Court to issue service packets to him. There is no cost for the Clerk of Court to issue service

packets to Plaintiff. If Plaintiff hires a process server to serve Defendant, he will be responsible for that cost.

Alternatively, "at the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court." Fed. R. Civ. P. 4(c)(3). Congress requires the U.S. Marshals Service to charge a fee for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for service by mail is $8.00 per item mailed; for process served personally by the U.S. Marshals Service, the fee is $65.00 per hour. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Congress has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service.

Plaintiff must file a notice on or **August 7, 2024**, indicating whether he will obtain service on Defendant on his own or if he desires service by the U.S. Marshals Service.

Accordingly,

**IT IS ORDERED** that Plaintiff Gilbert L. Williams's motion for leave to proceed without prepayment of the filing fee, ECF No. 2, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that, on or before **August 7, 2024**, Plaintiff Gilbert L. Williams shall file a notice indicating whether he will obtain service on Defendant Heather L. Leach on his own or if he desires service by the U.S. Marshals Service.

Dated at Milwaukee, Wisconsin, this 24th day of July, 2024.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge

Plaintiff will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**<u>DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS</u>**. If mail is received directly to the Court's chambers, **<u>IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE</u>**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **<u>IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE</u>**.